IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CAROLYN S. COBB, as GUARDIAN of the PERSON and PROPERTY of JAKE LEE COBB, | : : : : | |
| Plaintiff, | : : | |
| v. | : | 5:06-cv-066 (HL) |
| | : | |
| RODNEY PAUL DAWSON, JR.; JOHN DAWSON, JR. as EXECUTOR of the ESTATE of JOHN W. DAWSON, SR.; and JOHN W. DAWSON, JR., GARY ARNOLD DAWSON and RODNEY DAWSON, in their individual capacities d/b/a/ DAWSON BROTHERS FARMS, a general partnership. | : : : : : : : : : | |
| Defendants. | : | |

### O R D E R

At issue in this diversity action is a vehicle collision between a pickup truck and a farm tractor on May 8, 2005. The collision took place on a public highway in Pulaski County, Georgia. Plaintiff Carolyn Cobb is guardian of the person and property of Jake Lee Cobb, driver of the pickup truck involved in the collision. Plaintiff filed the present action alleging that Jake Lee Cobb's debilitating injuries were proximately caused by the negligence of Defendant Rodney Paul Dawson Jr. Specifically, the Complaint alleges that Rodney Paul Dawson Jr. ("Paul Dawson") negligently operated a farm tractor by failing to yield the right of way to Jake Lee Cobb, by failing to display a left turn signal, by obstructing the normal flow of traffic, and by otherwise operating the farm tractor in a negligent manner.

Also named in the suit are John W. Dawson Jr. as Executor of the Estate of John Dawson Sr., and John W. Dawson Jr., Gary Arnold Dawson, and Rodney Dawson in their individual

capacities doing business as a general partnership named Dawson Brothers Farms. The Complaint alleges that Paul Dawson was a partner, employee, or agent of Dawson Brothers Farms and the Estate of John W. Dawson Sr.,[1] and as a result, they are jointly and severally liable for any damages.

I.   **FACTS**

Construing the facts in the light most favorable to Plaintiff, the non-moving party, the Court finds as follows. Paul Dawson was in Pulaski County, Georgia on May 8, 2005 to celebrate Mother's Day with his family at his grandmother's house. Later that day, Paul Dawson and his father returned to Defendants' farm. Defendants were busy working in various fields that day as they were behind schedule and trying to catch up on work. Specifically, Defendants had in operation at least seven pieces of farm equipment in an effort to rectify delays caused by inclement weather. Paul Dawson was operating a farm tractor with a cultivator attached. The tractor was equipped with taillights as was the cultivator; however, the mechanism that links the two so that the signal lights will be synchronized was not activated. As a result, the cultivator's lights were inoperable and would not signal to a rear-approaching vehicle Paul Dawson's intention to slow down or to turn.

Jake Lee Cobb ("Cobb") was driving his black pickup truck northbound on Highway 112 in Pulaski County, Georgia on May 8, 2005. While operating his pickup, Cobb came upon a farm tractor also traveling northbound on Highway 112 at a rate of speed considerably below the posted limit. The tractor, operated by Paul Dawson, intended to make a left hand turn off of Highway 112

---

[1] While the Dawson Brothers Farms partnership and the Estate of John W. Dawson Sr. are named as individual parties in the above-captioned lawsuit, there is a suggestion that the two entities are one and the same. While Plaintiff proffers evidence in support of this suggestion, Defendants concede the issue, dismissing it as irrelevant in the disposition of their summary judgment motion. The Court agrees that the singularity of the entities is impertinent and will not address the issue as it has no bearing on the outcome of the motion.

onto a dirt road. Cobb attempted to overtake the slow moving tractor and attempted a legal pass, as both the truck and the tractor were in a passing zone. As Cobb attempted to pass the tractor, Paul Dawson began to turn onto the dirt road. There was no indication from Cobb's point of view of the tractor's intent to turn left, and the truck Cobb was operating collided with the tractor Dawson was operating.

Currently before the Court is the Motion for Summary Judgment of Defendants John Dawson Jr., as Executor of the Estate of John W. Dawson Sr., and John W. Dawson Jr., Gary Arnold Dawson, and Rodney Dawson in their individual capacities doing business as Dawson Brothers Farms, a general partnership ("Defendants") (doc. 48). Through this motion, Defendants seek to be fully discharged and dismissed from the above-captioned action; essentially, Defendants are challenging the allegation that they are jointly and severally liable for the damages allegedly caused by Paul Dawson's negligence, and the allegation that Defendants negligently maintained the tractor operated by Paul Dawson.

## II.     SUMMARY JUDGMENT STANDARD

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," then summary judgment must be granted. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the non-moving party. Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995). The Court may not, however, make credibility determinations

or weigh the evidence.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" which would entitle the moving party to a judgment as a matter of law.  Celotex, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party meets this burden, the burden then shifts to the non-moving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the non-moving party is not entitled to a judgment as a matter of law.  Id. at 324-26.  This evidence must consist of more than mere conclusory allegations.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## III. DISCUSSION

Defendants assert three arguments in their Motion for Summary Judgment as to why judgment should be entered in their favor and all claims against them discharged.  Specifically, Defendants contend that (1) no employee/employer or agent/principal relationship existed between themselves and Paul Dawson, (2) ownership of the subject tractor alone cannot support a claim of negligence against them, and (3) they did not negligently maintain the subject tractor.  It is worth noting that the Motion does not directly reference Defendant Paul Dawson, operator of the tractor involved in the collision, and the outcome will not affect his standing in the case.

During the briefing cycle of the pending Motion, it became apparent that Defendants

neglected to consider various theories of joint liability in their initial brief. In an effort to dispose of the issues presented in Defendants' Motion in as clear a manner possible, the Court will divide the analysis into a discussion of joint liability and independent liability. Specifically, the Court will address (1) how Paul Dawson's relationship with Defendants could subject them to joint liability for his actions, and (2) how Defendants own actions could subject them to liability independent of Paul Dawson's behavior.

**A.     Joint liability**

**1.     Agency**

Defendants' primary argument against joint liability is that no agency relationship existed between themselves and Paul Dawson. It is Defendants' contention that Paul Dawson was on a purely personal mission on the day in question. Specifically, Defendants claim that Paul Dawson was headed to a field to plant sunflowers in preparation for a dove hunt just before the collision took place. The subject tractor, Defendants argue, was to be used by Paul Dawson for the sole purpose of preparing a parcel of land for sunflowers to be planted–a measure that was outside the scope of Defendants' business and exclusively for Paul Dawson's recreation. Defendants contend that this fact–that Paul Dawson was acting exclusively for his personal benefit–proscribes any sort of relationship that could create imputable negligence.

It is axiomatic that a principal is liable for the torts of his agent if committed within the scope of principal's business. "Every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily." O.C.G.A. § 51-2-2. It follows that "[w]here the negligent driver of an automobile is the agent of the owner, the latter is liable under the theory of

5

respondeat superior." Walker Hall, Inc. v. Fincher, 169 S.E.2d 745, 747 (Ga. Ct. App. 1969) ("In such a case it is not necessary to show a true master-servant relationship, or the payment of compensation . . . ."). However, where an agent acts for his own personal benefit, his negligence will not be imputed to his principal. See, e.g., Hobbs v. Principal Fin. Group, Inc., 497 S.E.2d 243, 245 (Ga. Ct. App. 1998) ("In determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment. If a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from a doing of the act, the servant may be liable, but the master is not liable."). Defendants contend that Paul Dawson was on a purely personal mission when he was operating the tractor involved in the vehicle collision. This contention proscribes a finding of agency, and effects a burden shift to Plaintiff. The threshold question then becomes whether Plaintiff can meet her burden and present evidence showing a general issue of material fact, namely, that Paul Dawson was in fact an agent of Defendants and not merely engaging in a personal mission.

Plaintiff's theory of joint liability primarily relies on her claim that Paul Dawson was not planning on clearing a field in preparation for a dove hunt; on the contrary, he was helping his father's business which was backed up with work. Plaintiff points to Paul Dawson's statements when he was questioned by police after the collision. Paul Dawson told Trooper Abney that he was helping his father in the fields that day.[2] Further, in her deposition, Paul Dawson's mother claims

---

[2] Trooper Abney has no recollection of Paul Dawson mentioning anything concerning a dove hunt or sunflowers.

that her son would help her father on the farm, if he had asked. "[T]he general rule is that if the owner of a vehicle expressly procures another to do something solely for the owner's benefit, an agency relationship exists, regardless of whether the direction is couched as a request or as a demand, and regardless of whether the agent receives monetary compensation. Reese v. Sanders, 266 S.E.2d 313, 314 (Ga. Ct. App. 1980). Here, there is a question as to the actual relationship[3] between Paul Dawson and Defendants–there is deposition testimony suggesting that Paul Dawson was helping Defendants farm their land rather than acting for his own personal benefit.

Plaintiff provides circumstantial evidence in addition to direct evidence in an effort to prove that Paul Dawson was not acting for his personal benefit when he was operating the subject tractor. Plaintiff contends that Paul Dawson was helping his family's farming business, as evidenced by his responses to an officer on the scene after the vehicle collision. However, Plaintiff also points to the activity undertaken on Defendants' farm lands that day. Specifically, Plaintiff notes all of the activity on Defendants' farm land and the fact that Paul Dawson was admittedly unfamiliar with how to prepare a field to plant sunflowers. According to Plaintiff, it is reasonable to infer that Paul Dawson was assisting Defendants in their farming endeavors because Defendants were backed up and Paul Dawson had no experience performing the task he claimed he set to undertake. "Where [] evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996) ("A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and

---

[3] If the evidence raises an issue of material fact as to whether Paul Dawson was acting as Defendants agent or for his own purposes, summary judgment in favor of Defendants is not appropriate. See, e.g., Lindsey v. Fitzgerald, 276 S.E.2d 275, 277 (Ga. Ct. App. 1981).

7

upon which the non-movant relies, are 'implausible.'"). Based on the evidence proffered here, the Court does not deem Plaintiff's contention of agency as implausible. Coupled with Paul Dawson's admission that he was helping Defendants in the fields, the Court concludes that Plaintiff has met her burden of demonstrating a general issue of material fact. Accordingly, Defendants are not entitled to an entry of judgment as a matter of law with respect to Plaintiff's claim of joint liability based on a theory of agency.

### 2. Joint venture

Another theory of joint liability raised during the briefing cycle is that of a joint venture. "The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other." Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997); see also Boatman v. George Hyman Constr. Co., 276 S.E.2d 272, 274-75 (Ga. Ct. App. 1981). Defendants again rely on their contention that Paul Dawson was on a purely personal mission to prepare a field for a dove hunt, and that there was never any intention to enter into a joint undertaking for profit. Plaintiff contends that Defendants are not entitled to judgment because the field Paul Dawson was going to prepare for a dove hunt could be deemed a shared benefit since his father, Rodney Dawson Sr. could have also hunted on the land. However, Plaintiff makes no suggestion that Paul Dawson would profit financially from his work preparing a field for a dove hunt. Further, no suggestion is made that Paul Dawson and Defendants would somehow share control of the hunt. The Court rejects this argument and concludes that judgment should be entered in favor of Defendants with respect to any claim that Paul Dawson and Defendants were joint venturers.

### 3. Partnership

Defendants challenge Plaintiff's claim that Paul Dawson was a member of the partnership, thereby subjecting the other partners to liability for his torts. In support of this claim, Plaintiff points to payments Paul Dawson purportedly received as rent for land he owned that was used by Defendants for farming. Because the payments fluctuated over the years, Plaintiff contends that disbursement was not rent but rather a share of Defendants' profits.

"A partnership is an association of two or more persons to carry on as co-owners a business for profit and includes, for all purposes of the laws of this state, a limited liability partnership." O.C.G.A. § 14-8-6. Defendants cite another provision of Georgia statutory law to support their position that their relationship with Paul Dawson does not rise to the level of a partnership. The statute reads in relevant part: "The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business; provided, however, that no such inference shall be drawn if profits were received in payment of the following, even though the amount of payment varies with the profits of the business: (C) Rent to a landlord." O.C.G.A. § 14-8-7(4)(C). While Plaintiff speculates as to the nature of the payments, she provides no evidence that they are for anything but rent. Further, she provides no evidence that could even rise to an inference that Paul Dawson shares in the profits and losses of the partnership. The Court concludes that Plaintiff has failed to establish the existence of an essential element of a partnership, namely that Paul Dawson received a share of the profits of Dawson Brothers Farms. Accordingly, judgment shall be entered in favor of Defendants with respect to Plaintiff's claim that a partnership relationship existed between Paul Dawson and Defendants.

### 4. Ownership of tractor

Defendants contend that ownership of the tractor alone does not subject them to liability because it was involved in a collision. Plaintiff claims that "ownership [of the tractor and cultivator] gave the family farming operation, the Estate and Dawson Brother Farms, significant control." (Pl's. Resp., doc. 60, at 16.) As discussed above, agency is the test of liability, not ownership. Collins v. Hamilton, 576 S.E.2d 42, 43 (Ga. Ct. App. 2002). The Court concludes that evidence of mere ownership will not expose Defendants to liability because of alleged operator negligence. Accordingly, judgment shall be entered in favor of Defendants with respect to Plaintiff's claim that mere ownership of the subject tractor subjects them to liability for the alleged negligence of Paul Dawson.

**B.      Independent Liability**

Defendants also seek an entry of judgment in their favor on Plaintiff's claim that, as owners of the farm equipment, they negligently maintained the subject tractor. Plaintiff contends that the tractor was negligently maintained because the cultivator attached to the rear of the tractor did not have functioning signal lights. On the day in question, Paul Dawson was operating a tractor with a cultivator attached to it. It is uncontroverted that although the cultivator was equipped with signal lights, the mechanism that would activate the lights was not plugged in.[4] Defendants argue that Georgia law does not require a cultivator to have signal lights, and in the alternative, that the failure to activate the cultivator's lights falls on the operator of the tractor rather than on the owner.

The parties differ on which statute should govern the requirement and use of signal lights on the subject tractor and cultivator. Plaintiff contends that the tractor should be governed by the

---

[4] The tractor was equipped with signal lights, and the evidence suggests that although Paul Dawson may have signaled his intent to turn, the cultivator he was towing obscured the tractor's signal lights.

10

Uniform Rules of the Road, and cites the relevant statute concerning signal lights.[5] Defendants, on the other hand, argue that a cultivator would not be governed by the Uniform Rules of the Road because it is not a motor vehicle as defined by the Georgia Code.[6] The Court is not inclined to side with Defendants on the issue. The tractor was required to have signal lights, and attaching the cultivator should not exempt the tractor from being covered by O.C.G.A. § 40-6-124(b). Further, an issue of fact remains as to exactly how the tractor and cultivator came to be attached before Paul Dawson operated it that day. The inference has been made by Plaintiff that Defendants had as part of their fleet of farm equipment a tractor with attached cultivator that, when driven on the highway, was in violation of Georgia law. Because of this, the Court cannot say that Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claim of independent liability. Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's claim of an independent act of negligence is DENIED.

## III. CONCLUSION

Accordingly, Defendants' [48] Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiff may proceed with agency theories of joint liability, but not theories

---

[5] That statute states in relevant part:
> Any motor vehicle in use on a highway shall be equipped with, and a required signal shall be given by, signal lights when the distance from the center of the top of the steering post to the left outside limit of the body, cab, or load of such motor vehicle exceeds 24 inches or when the distance from the center of the top of the steering post to the rear limits of the body or load thereof exceeds 14 feet. The latter measurement shall apply to any single vehicle and also to any combination of vehicles.

O.C.G.A. § 40-6-124(b).

[6] "'Motor vehicle' means every vehicle which is self-propelled other than an electric personal assistive mobility device (EPAMD)." O.C.G.A. § 40-1-1(33).

based on a joint venture, a partnership, or mere ownership of the farm tractor involved in the collision. Further, the Court denies summary judgment in favor of Defendants with respect to Plaintiff's claim of independent liability arising out of Defendants' purported negligent maintenance of the subject farm tractor.

SO ORDERED, this 16th day of November, 2007.

/s/ *Hugh Lawson*
HUGH LAWSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

HL/cbb