**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| CAROLYN S. COBB, as GUARDIAN of the PERSON and PROPERTY of JAKE LEE COBB, | : : : : | |
| Plaintiff, | : : | |
| v. | : | 5:06-cv-066 (HL) |
| | : | |
| RODNEY PAUL DAWSON, JR.; JOHN DAWSON, JR. as EXECUTOR of the ESTATE of JOHN W. DAWSON, SR.; and JOHN W. DAWSON, JR., GARY ARNOLD DAWSON and RODNEY DAWSON, in their individual capacities d/b/a/ DAWSON BROTHERS FARMS, a general partnership. | : : : : : : : : : | |
| Defendants. | : | |

**O R D E R**

**I.     BACKGROUND**

At issue in this diversity action is a vehicle collision between a pickup truck and a farm tractor that took place on May 8, 2005. The collision occurred on a public highway in Pulaski County, Georgia when the pickup truck attempted to overtake the slow moving tractor while both vehicles were in a passing zone. Plaintiff Carolyn Cobb is guardian of the person and property of Jake Lee Cobb, driver of the pickup truck involved in the collision. Plaintiff filed the present action alleging that Jake Lee Cobb's debilitating injuries were proximately caused by the negligence of Defendant Rodney Paul Dawson Jr., the operator of the tractor. Also named as Defendants in the suit are John W. Dawson Jr. as Executor of the Estate of John Dawson Sr., and John W. Dawson Jr., Gary Arnold Dawson, and Rodney Dawson in their individual capacities doing business as a general partnership named Dawson Brothers Farms.

Currently pending before the Court is Plaintiff's Motion to Exclude Unreliable Opinion Testimony (doc. 71). Through this motion, Plaintiff seeks exclusion of what she considers unreliable expert testimony. Specifically, Plaintiff objects to the admissibility of allegedly unreliable expert opinions possessed by two of Defendants' expert witnesses: (1) Herman Hill, a licensed professional engineer retained to investigate and reconstruct the accident scene, and (2) Kathy Willard, a rehabilitation counselor retained to evaluate a life-care plan created by Plaintiff's expert. Having considered the parties' briefs and the applicable law, and for the reasons discussed below, the Court grants in part and denies in part Plaintiff's Motion to Exclude Unreliable Opinion Testimony.

## II. STANDARDS OF ADMISSIBILITY FOR EXPERT TESTIMONY

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Therefore, according to Rule 702, expert testimony is only admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness's opinions must be reliable; and (3) the witness's opinions must assist the trier of fact. In addition, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison

v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The first test under Rule 702, therefore, is whether the witness offering the testimony is qualified to do so. There is no bright-line rule for determining whether a given witness is qualified to offer expert testimony. Rather, the decision is inherently case-specific. Nevertheless, Rule 702 does offer a basic framework for evaluating a witness's qualifications by providing that the expertise must be established by one or more of the following bases: knowledge, skill, experience, training, or education. Fed. R. Evid. 702.

In fixing the requisite level of knowledge, skill, experience, training, or education an expert witness must possess, courts are called upon to balance the advantages and disadvantages of expert testimony. On one hand, allowing only the most qualified witnesses to serve as experts reduces the risk a jury will overvalue the opinions of a minimally qualified witness simply because the witness was classified as an expert by the court. On the other hand, requiring stellar qualifications of all witnesses could unnecessarily deprive the jury of helpful testimony based upon minor shortcomings in a witness's qualifications. As a result, courts liberally construe a witness's qualifications in favor of expert status and consider gaps in a witness's qualifications a matter for the jury to consider in determining what weight to give to the testimony. See Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989).

A witness's qualifications must correspond to the subject matter of his or her proffered testimony. See Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999) (citing Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir.1990)) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."). In other words, a

witness qualified as an expert in one subject may not offer expert testimony on a different subject where the witness's qualifications have not been demonstrated. General knowledge in a field, however, is normally sufficient to qualify a witness as an expert in that field's specialties as well. For example, most courts conclude that a general practitioner can offer expert testimony concerning medical conditions routinely treated by specialists. See, e.g., Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985) (holding two board-certified obstetrician-gynecologists were qualified to offer expert testimony in teratology, the study of abnormal development). Furthermore, unlike lay witnesses, it is not necessary that an expert witness have personal knowledge of the facts at issue in the case. See Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.").

In addition to finding that the proposed expert is qualified, the Court must also find that the testifying witness's opinions are reliable. In Daubert v. Merrell Dow Pharmaceuticals,, the Supreme Court of the United States directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. 579, 592-93 (1993). Although Daubert originally involved only scientific expert testimony, the Supreme Court, in Kumho Tire Co. v Carmichael, 526 U.S. 137 (1999), explained that the same type of analysis was also required when evaluating non-scientific expert testimony.

To assist courts in conducting the required assessment, the Supreme Court provided a non-exhaustive list of four factors to consider: "(1) whether the theory or technique can be tested;

(2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." Allison, 184 F.3d at 1312 (citing Daubert, 509 U.S. at 593-94). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citations omitted). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152.

Regardless of the specific factors considered in evaluating the reliability of expert testimony, "[p]roposed testimony must be supported by appropriate validation- i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes. Yet, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. In any case, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Cook ex rel. Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1113 (11th Cir. 2005).

In addition to satisfying the reliability requirement, expert testimony must assist the trier of fact to decide a fact in issue. In short, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. Thus, expert

5

testimony regarding issues within the understanding and experience of average citizens is properly excluded. United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985). Nevertheless, "expert testimony is admissible if it will simply assist the trier of fact to understand the facts already in the record, even if all it does is put those facts in context." 4 Joseph M. McLaughlin et al., Weinstein's Federal Evidence § 702.03[1] (2d ed. 2007). However, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

## III. DISCUSSION

Citing unreliability, Plaintiff's current motion seeks to exclude part, if not all, of the expert testimony to be proffered by the two expert witnesses retained by Defendants in this case. The Court will analyze each of the expert witnesses to determine whether all or part of their testimonies should be admissible at trial. In order for Defendants' experts to be allowed to offer their expert opinions at trial, each must be qualified, and their opinions must be both reliable and relevant so as to assist the trier of fact.

### A. Herman Hill

Plaintiff seeks to exclude testimony from Herman Hill regarding Jake Lee Cobb's impact and pre-braking speed on the grounds that it is unreliable and, therefore, inadmissible under Rule 702. Mr. Hill's qualifications are not questioned by Plaintiff, and the Court sees no reason why he could not testify competently regarding his findings based on the reconstruction of the accident. Mr. Hill is a licensed professional engineer and an accredited accident reconstructionist. He has twelve years of experience in his field, and he has been called upon to offer his expert opinion numerous times in the past. Also, the relevance of Mr. Hill's opinions is also uncontroverted. Obviously, in a case

6

of alleged negligence while operating a vehicle, the trier of fact will benefit from the testimony of an expert who can assess potential causes of the collision at issue. However, Mr. Hill's qualifications and the relevance of his opinions notwithstanding, this Court must make the determination that his opinions are reliable before he can be allowed to present them.

An individual may be qualified as an expert yet still offer unreliable testimony. Frazier, 387 F.3d at 1261. Thus, "the reliability criterion remains a discrete, independent, and important requirement for admissibility." Id. Therefore, the Court will determine the ultimate admissibility of Mr. Hill's testimony on impact and pre-braking speeds by measuring its reliability under the four-factor test articulated by the Supreme Court in Daubert. In some cases, however, the traditional Daubert factors will not aid in determining reliability and, in such cases, the trial court is not required to apply them. Id. As the Eleventh Circuit noted in Frazier: "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Id.

Plaintiff contends that Mr. Hill's opinions on the speed of the truck at impact are based solely on conjecture and not on accepted practices. Plaintiff points to the paucity of data available to Mr. Hill that he would otherwise use to perform the calculations necessary to accurately reconstruct the accident scene. Specifically, Plaintiff notes that Mr. Hill was unable to record crush data and degrees of deformity because sheet metal had been removed from the truck before he conducted his inspection. Defendants, on the other hand, maintain that the opinions of Mr. Hill are reliable in light of the fact that he did not possess all of the information that he usually would when performing speed calculations. They contend that Mr. Hill's experience studying crashed vehicles in person and in photographs, as well as his engineering expertise, allows him to formulate limited opinions about

7

the impact and pre-braking speed.

Based on the foregoing arguments, the Court determines that while the testimony that Mr. Hill could provide regarding the impact and pre-braking speeds would not necessarily pass muster under any of the illustrative factors in Daubert, the Court is nonetheless convinced of its reliability after considering the witness's experience in his field. Defendants admit that the most Mr. Hill could provide concerning his speed calculations is an informed assumption. A foreign circuit has addressed a scenario where an expert was unable to scientifically reconstruct an accident. "Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." J.B. Hunt Transport., Inc. v. General Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001) (affirming district court ruling to exclude expert testimony) (citation omitted). While Defendants argue that Plaintiff's challenges go to the weight of Mr. Hill's testimony, and not its admissibility, the Court is somewhat concerned that none of the articulated Daubert factors supports its reliability. Admittedly, the key inquiry in determining the reliability of Mr. Hill's expert opinions is whether the reasoning or methodology underlying his testimony is scientifically valid. However, "[t]he focus of this inquiry is not on the conclusions generated by the expert's methodology, but on the reasonableness of the expert's use of such an approach, together with the particular method of analyzing the data obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1315 (N.D. Ga. 2002). While Mr. Hill's methodology for calculating the impact and pre-braking speeds is unorthodox, it is certainly reasonable considering the absence of certain materials used to make such measurements. His inability to carry out the steps he would normally take was no fault of his own, and Mr. Hill's knowledge and experience in the field, viz., his exposure to numerous vehicle impacts

at various speeds, allow for him to calculate these speeds without fear of the fact finder being exposed to expert testimony that is not grounded in an accepted body of learning or experience in the expert's field.

### B. Kathy Willard

Plaintiff seeks to exclude expert testimony form Kathy Willard regarding the details of the life-care plan created by Plaintiff's retained expert. Again, Plaintiff does not challenge Ms. Willard's qualifications to testify competently on the subject of life-care plans, and the Court has no reason to doubt her abilities to do so. Ms. Willard is a counselor with an advanced degree in Rehabilitation Counseling. She has a quarter-century's worth of experience and she has prepared over twenty life-care plans. The Court is satisfied that she is qualified to testify, but the reliability of the testimony must still be determined.

Defendants plan to have Ms. Willard testify to challenge the life-care plan created by Plaintiff's expert while conceding that Ms. Willard did not prepare her own plan. The Court agrees with Plaintiff that the distinction Defendants argue lies in semantics. Ms. Willard cannot challenge the specifics of one plan without possessing the knowledge to create her own. Defendants, in support of Ms. Willard's being allowed to testify, provide no argument in favor of reliability under the Daubert framework. Unlike the scenario with Mr. Hill above, Ms. Willard has made no attempt to educate herself as to the specific needs of Jake Lee Cobb, a departure from her standard methodology.

It is clear that no reliability argument can be made with respect to her offering her own life-care plan. At most, it would appear that she can testify as to how to make a life-care plan and what steps are involved in its creation. But Ms. Willard cannot testify specifically concerning what Jake

9

Lee Cobb needs and does not need as part of a life-care plan; all she can do is criticize Plaintiff's expert's methodology, not his findings. With that said, the Court can envision a scenario where Ms. Willard is called upon to challenge Plaintiff's expert's life-care plan, assuming the facts he used to create it to be true. In this scenario, Ms. Willard's opinions of another expert's plan would be reliable. Provided she proceeds under the assumption that the facts were true, Ms. Willard can certainly criticize how those facts were used in the formation of a life care-plan.

Notwithstanding the disposition of this Order, the exact boundaries of her testimony are as of yet undetermined. The pre-trial hearing is a better venue for ascertaining the limits of Ms. Willard's expert testimony, so the Court will wait until then before issuing such a ruling. Plaintiff's Motion to Exclude Unreliable Opinion Testimony is granted with respect to Ms. Willard to the extent that any evaluation of Plaintiff's life-care plan cannot reference details to which she made no attempt to uncover.

## IV. CONCLUSION

While both of Defendants' experts are qualified to offer expert opinions, the admissibility of their testimony ultimately depends on more than just their expertise and skill. The reliability of an expert's opinion has become the key inquiry into determining whether an expert can testify at trial. Here, Defendant has offered two experts whose reliability has been called into question. While the analysis of Ms. Willard's planned testimony under the Daubert framework suggests that her opinions are unreliable, the Court finds that Mr. Hill's experience makes up for his

atypical methodology, all things considered. Accordingly, Plaintiff's Motion to Exclude Unreliable Opinion Testimony is GRANTED in part and DENIED in part.

SO ORDERED, this 12th day of December, 2007.

/s/ *Hugh Lawson*
HUGH LAWSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT

HL/cbb